UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

BENFIELD, INC.,
a Delaware corporation; and
BENFIELD HOLDINGS, INC.,
a Delaware corporation;

           Plaintiffs,

v.

DAVID MOLINE, an individual;
MARK HAGEN, an individual;
and JOHN B. COLLINS ASSOCIATES,
INC., a Minnesota corporation;

           Defendants,

**ORDER**
Civil File No. 04-3513 (MJD/SRN)

_____

Robin Caneff Gipson, Gregory James Stenmoe and Timothy Robert Thornton, Briggs & Morgan, Counsel for Plaintiffs Benfield, Inc., and Benfield Holdings, Inc.

Ansis V. Viksnins and Reuben A. Mjaanes, Lindquist & Vennum, PLLP, Counsel for Defendants David Moline, Mark Hagen, and John B. Collins Associates, Inc.

_____

## I.    INTRODUCTION

This matter is before the Court regarding Plaintiffs' Motion in Limine to Exclude Evidence of Servicing Costs. [Docket No. 260] For the reasons that follow, Plaintiffs' motion is **DENIED**.

## II.    BACKGROUND

The factual and procedural background of this case is laid out in detail in

1

the Court's February 22, 2006 Order. [Docket No. 243] In that Order, the Court granted summary judgment on multiple claims and left various claims for trial. The Court granted summary judgment to Plaintiffs on their conversion claim, leaving the issue of damages to be determined at trial.

## III.   DISCUSSION

Benfield placed certain clients into reinsurance treaties. Partway through those treaty terms the clients switched to Collins as their reinsurance broker. The clients paid the insurance premiums and commissions through their new reinsurance broker, Collins. Collins retained the commission. Benfield claimed that those commissions belonged to it on the theory that a reinsurance commission is earned when the broker places the treaty. In its February 22, 2006 Order, the Court granted summary judgment on liability only on Plaintiffs' conversion claim. The Court held as follows:

> The Court concludes that the general rule for insurance brokerage commissions applies to the reinsurance industry: generally, reinsurance brokerage commissions are earned at placement; if the client switches brokers partway through the insurance contract year, the initial broker is still entitled to those commissions until the treaty renewal period. Because neither party has submitted any evidence regarding the existence and terms of any contracts governing brokerage commissions, the general presumption applies. As the placing broker, Benfield is entitled to the brokerage commissions until the end of a treaty term.

(Feb. 22, 2006 Order at 34.) Thus, the Court determined liability on the conversion claims; it did not address any potential damages.

Plaintiffs now move to exclude evidence of servicing costs at trial.  They argue that these expenses should not be set off against the brokerage commissions to which they are entitled.

Generally, "[t]he measure of damages for conversion is the fair market value of the . . . goods at the time of the conversion, plus interest from that date." Bloomquist v. First Nat'l Bank of Elk River, 378 N.W.2d 81, 86 (Minn. Ct. App. 1985).  Despite this general rule, the calculation changes when a defendant's tortious act benefits the plaintiff in some way.  "The benefits rule provides that if a defendant's tortious conduct confers a benefit, as well as a harm, upon the plaintiff, the jury may weigh the value of the benefit against the claimed harm." Gits v. Norwest Bank Minneapolis, 390 N.W.2d 835, 837-38 (Minn. Ct. App. 1986) (citing Restatement (Second) of Torts § 920 (1977); Clapham v. Yanga, 300 N.W.2d 727 (Mich. Ct. App. 1980)).  The benefits rule applies to tort claims for conversion.  See, e.g., Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 71 (1st Cir. 2005) (holding claimant's conversion claim properly dismissed because it had proven no damages in light of benefits rule).  The rule follows from the fact that "the law of torts attempts primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort."  Restatement (Second) of Torts § 901, cmt. a.

The Court concludes that evidence of the servicing costs will be admissible

3

in trial to address the issue of damages for the conversion claim. Although Collins committed a tort by converting commissions that rightfully belonged to Benfield, its tortious actions may have also benefitted Benfield by relieving it of the costs associated with servicing those clients. Allowing Benfield to recover the entire commissions while at the same time allowing it to reap the benefit of saving substantial servicing costs would grant Benfield a windfall.

The Court notes that evidence of servicing costs may also be admissible to prove net damages on other remaining claims, such as the remaining breach of contract claims. See, e.g., Cardinal Consulting Co. v. Circo Resorts, Inc., 297 N.W.2d 260, 269 (Minn. 1980); Deutz & Crow Co., Inc. v. Anderson, 354 N.W.2d 482, 489 (Minn. Ct. App. 1984).

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

Plaintiffs' Motion in Limine to Exclude Evidence of Servicing Costs [Docket No. 260] is **DENIED**.

Dated: Jun 12, 2006         s / Michael J. Davis
                            Judge Michael J. Davis
                            United States District Court

4